FILED
97 DEC 19 AM 8: 13
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC 19 1997

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **HARRY DAVIS,** | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV-97-N-2782-S |
| **JIM BURKE AUTOMOTIVE, INC., et al.** | ] | |
| Defendant(s). | ] | |

**Memorandum of Opinion**

**I.   Introduction.**

This civil action was originally brought in the Circuit Court of Jefferson County, Alabama, and was removed by the defendants to this court on the basis of federal question jurisdiction. Plaintiff Harry Davis ("Davis") brought suit against Jim Burke Automotive, Inc. ("Jim Burke"), Chrysler Financial Corporation, Inc. ("Chrysler"), David Bolden ("Bolden"), and Omni Recovery Service of Alabama, Inc. ("Omni").[1] Mr. Davis's claims as to the defendants are for (1) misrepresentation; (2) violation of federal Truth in Lending laws; and (3) fraud.

The court presently has for consideration the motions to stay proceedings and compel arbitration, filed by defendant Chrysler on October 21, 1997, and by defendants Jim Burke and Mr. Bolden on October 22, 1997, respectively. The motions have been briefed

---

[1] On October 31, 1997, the court dismissed the action as against all fictitious defendants. Omni has filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code and has not yet been served with a copy of the complaint in the state court action. *Notice of Removal*, at 2.

13

by the parties and are ripe for decision. Upon due consideration, the motions will be granted.

## II. Background.

On May 12, 1995, Mr. Davis entered into a vehicle sales transaction with Jim Burke for the purchase of a new Dodge Dakota pickup truck. Mr. Davis traded-in two vehicles to Jim Burke as part of this transaction. According to Mr. Davis, the selling price of the purchased vehicle was $19,105 but, in an effort to obtain financing, Jim Burke fraudulently charged him an additional $3,451 to make it appear to Chrysler, the financing company, that the actual sale price of the vehicle was $22,556. *Complaint*, ¶¶ 27-29. Mr. Davis contends that the defendants misrepresented material facts in the sale of the vehicle. Moreover, the plaintiff asserts claims under the federal Truth in Lending Act for nondisclosure of credit actually extended and for improper arrangement of disclosures.

The sales transaction also involved two relevant documents: (1) a retail buyer's order, which contained an arbitration clause signed by Mr. Davis and Jim Burke; and (2) a retail installment contract, which was assigned to Chrysler. The retail buyer's order specifically incorporates the retail installment contract.

The retail buyer's order signed by Mr. Davis and Jim Burke provides in pertinent part:

> All disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract, its subject matter or its negotiation ... or any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact shall be submitted to binding arbitration.... The contract consists of the following documents: ... this retail buyer's order ... retail sales contract and security agreement....

*Retail Buyer's Order* (Exhibit A to Chrysler's Motion to Compel Arbitration and for Stay of Proceedings). Mr. Davis's retail installment contract, signed by him and assigned to Chrysler, provides:

> **Assignment.** You acknowledge that this contract will be assigned to Chrysler Credit Corporation ("Assignee"). You further acknowledge that Assignee will acquire all of [Jim Burke's] interest in this contract and in the Vehicle and will be entitled to all of the rights and remedies granted to [Jim Burke] pursuant to the terms and conditions of this contract including, but not limited to, the right to receive payments and to require the performance of obligations required by this contract.

*Retail Installment Contract executed May 12, 1995.*

At some point, Mr. Davis defaulted on his payments to Chrysler under the assigned retail installment contract. Therefore, on October 30, 1996, Chrysler filed suit (civil action no. DV96-7510) against Mr. Davis in the District Court of Jefferson County, Alabama. Service of process was attempted and was accepted by someone at an address at which Mr. Davis did not reside. *See Affidavit of Rodney E. Nolen* ¶3. For this reason, a default was mistakenly taken in the collection case on May 23, 1997. *Id.* An attorney for Mr. Davis then filed a motion to set aside the default in the District Court of Jefferson County, together with a notice of hearing concerning his motion to set aside default. The court heard argument and granted the motion on August 28, 1997. No further action was taken by either party with respect to that collection action.

Counsel for Chrysler has filed an affidavit stating that, prior to the time the District Court of Jefferson County set aside the default, he was unaware of the arbitration agreement contained in the buyer's order applicable to the transaction made the basis of the collection suit. *See Affidavit of Rodney E. Nolen* ¶6.

3

### III. Motion to Stay Proceedings and Compel Arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides, in relevant part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1997). The FAA further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration ... shall on application of one of the parties stay the trial of the-action until such arbitration has been had in accordance with the terms of the agreement. . .

*Id.* § 3. It is well-settled that the provisions of the FAA represent a national policy strongly favoring arbitration. *See Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984).

In their respective motions, the defendants ask the court to stay all proceedings and compel Mr. Davis to arbitrate all his claims against them. Mr. Davis does not dispute the facial validity of the arbitration agreement he executed on May 12, 1995.[2] He does, however, assert two (2) arguments in opposition to the motions to compel arbitration. First, Mr. Davis argues that the arbitration agreement sought to be enforced is "not sufficiently broad as to allow arbitration regarding Plaintiff's claims of fraud against Defendants."

---

[2] In fact, the Alabama Supreme Court recently held that a plaintiff suing Jim Burke and another assignee (like Chrysler in the present case) was required to arbitrate all of her claims, which included misrepresentation, under an arbitration agreement containing verbatim language to the one at issue here. *See Nissan Motor Acceptance Corp. v. Ross*, No. 1960389, 1997 WL 476864 (Ala. Aug. 22, 1997).

4

*Plaintiff's Objection to Defendant's Motion to Compel Arbitration and For Stay of Proceedings* ¶9. Second, Mr. Davis contends that Chrysler, by filing its collection suit in the District Court of Jefferson County, has waived its right to arbitration. *See id.* ¶6. The court will deal with these two issues in order.

### A. Scope of the Arbitration Agreement.

The Supreme Court has held that, "when a court interprets [arbitration] provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration'." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, ___ U.S.___, ___, 115 S. Ct. 1212, 1218, 131 L. Ed. 2d 76 (1995) *(quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S. Ct. 1248, 1254, 103 L. Ed. 2d 488 (1989)). In addition, "[t]he law is clear that tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause." *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996). "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Id.*

Here, viewing the arbitration provision contained in Mr. Davis's buyer's order in light of the strong federal policy favoring arbitration, the court has little difficulty in concluding that Mr. Davis's fraud claim is arbitrable. The arbitration clause requires arbitration of "all disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract, its subject matter or its negotiation . . . *or any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact*

5

*shall be submitted to binding arbitration.*" By its own terms, then, it applies to disputes arising from allegations of fraud. As a result, Mr. Davis's argument concerning the scope of the arbitration clause is without foundation.

### B.     Waiver.

Mr. Davis alternatively argues that he should not be compelled to arbitrate his claims against the defendants in this action because Chrysler waived its right by filing a collection suit against him in the District Court of Jefferson County. *Plaintiff's Objection to Defendant's Motion to Compel Arbitration and For Stay of Proceedings* ¶6.

Given the strong federal policy favoring enforcement of arbitration agreements, a finding of waiver is not favored in the federal courts and the party asserting waiver bears a heavy burden of proof. *Knorr v. Brake Corp. v. Harbil, Inc.*, 556 F. Supp. 489 (N.D. Ill. 1983). Thus, a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. *See NCR Credit Corp. v. Reptron Electronics*, 863 F. Supp. 1561, 1565 (M.D. Fla. 1994) (citing *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

The Eleventh Circuit holds that "[w]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995). Prejudice has been found in situations where the party seeking arbitration allows the opposing party

6

to undergo the types of litigation expenses that arbitration was designed to alleviate. *Id.* (citing *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)).

Applying these considerations to the facts in this case, the court finds that neither Chrysler nor any of the defendants have waived their right to arbitration. First, it seems clear that Chrysler was not aware of its right to arbitrate its claims against Mr. Davis at the time it filed its collection action or during the pendency thereof. *See Affidavit of Rodney E. Nolen* ¶6. When Chrysler's attorneys became aware of the existence of the arbitration clause, the collection case was promptly dismissed. *Id.* Certainly, the action taken by Chrysler – the filing and maintenance of a lawsuit when the forum for dispute resolution was clearly contained in the contract papers upon which its claim was based – is questionable. However, based upon the evidence currently before the court, Chrysler cannot be said to have known of its right to arbitrate its collection dispute. *See Hoffman Const. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (requiring knowledge of the right to compel arbitration prior to a finding of waiver); *cf. Putman Const. & Realty Co. v. Byrd*, 632 So. 2d 961, 965 (Ala. 1992) (stating that "under Alabama law, a waiver requries the *intentional* relinquishment of a known right, and that intentional relinquishment must be shown in an unequivocal manner") (emphasis added).

Second, while Chrysler prosecuted its collection action against Mr. Davis to the entry of default, doing so cannot be deemed to constitute acts inconsistent with its existing right to arbitrate. After all, Mr. Davis was never properly served with process in the collection suit and, as a result, Mr. Davis never had the opportunity to demand arbitration pursuant to the agreement. In fact, the record in the case fails to indicate that Mr. Davis

7

asked for arbitration or that Chrysler refused to go to arbitration over the collection claim. Absent evidence of communication between the parties on whether arbitration of the collection claim would be entered into voluntarily, Chrysler's filing in the District Court of Jefferson County was simply one method by which to eventually compel arbitration and, therefore, was not inconsistent with retaining its right to eventual arbitration.

Finally, the court concludes that Mr. Davis has not been prejudiced by the minimal litigation in the collection suit. The mere fact that Chrysler delayed in calling for arbitration is not enough to cause a waiver of its right to arbitrate. For example, a party has been allowed to seek arbitration thirteen months after a suit was filed, even though he had answered the complaint, served several interrogatories and requests for the production of documents, and participated in a pretrial conference. *See Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir. 1991); *see also Stifel, nicolaus & Co., Inc. v. Freeman*, 924 F.2d 157 (8th Cir. 1991) (brokerage firm sued customers for outstanding balances; customers filed a counterclaim and the parties engaged in written discovery; six months after filing suit, the brokerage firm moved to compel arbitration).

The only proceeding in which Mr. Davis meaningfully participated in during the collection action was a hearing on his motion to set aside the default. Moreover, no discovery has taken place in either the present case or in the collection action. As a result, the court concludes that Mr. Davis will not be prejudiced by having to submit his claims to arbitration pursuant to the express terms of his contract. Accordingly, the defendants' motions to stay all proceedings and compel arbitration will be granted.

8

## IV. Conclusion.

Accordingly, the defendants' motions to stay all proceedings and compel arbitration will be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _____18th_____ of December, 1997.

                                        EDWIN L. NELSON
                                UNITED STATES DISTRICT JUDGE